# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **ARROW ELECTRONICS, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No.: CV-04-HS-2796-S |
| ) | |
| **E.ON AG, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OF OPINION

This cause is before the Court on the Motion to Dismiss (doc. 26), filed by the defendants E.ON AG, E.ON US Investments Corporation, E.ON North America, Inc., and Fedelia Corporation (collectively the "E.ON defendants").[1] In the motion, the defendants seek an order dismissing this cause pursuant to Federal Rules of Civil Procedure 12(b)(1), (3), and (6).

## FACTS

The plaintiff Arrow Electronics, Inc., commenced this action by filing a complaint with this court on September 23, 2004. In the complaint, plaintiff asserts claims in eight counts seeking "declaratory relief, contribution, damages, and

---

[1] Plaintiff's original complaint also named Wyle Laboratories as a defendant. Wyle Laboratories did not participate in bringing the motion to dismiss and is not being referred to when the court uses the term "E.ON defendants."

attorney's fees based upon the E.ON Group's bad faith refusal to honor its responsibility to pay the investigation, clean-up, and compliance costs (past and future) relating to the release by a former E.ON subsidiary of hazardous substances at sites located within the State of Alabama and elsewhere, in flagrant contempt of the laws of the United States, the laws of the State of Alabama, and the contract with Arrow in which the E.ON Group willingly assumed liability for such costs." (Compl., doc. 1, ¶ 1.). The complaint alleges the following facts, which for the purposes of the instant motion, are presumed true.

In 1994, a company named Wyle Electronics, Inc. sold its scientific testing business to the defendant, Wyle Laboratories, Inc. ("Wyle Labs"). (*Id.* ¶ 25.) The transaction was accomplished by an asset purchase agreement (hereinafter the "1994 Wyle Electronics-Wyle Labs Agreement"). Under the 1994 Agreement, Wyle Labs obtained scientific testing sites located in Norco, California, and Huntsville, Alabama. (*Id.* ¶ 15.) In section 10.4 of the 1994 Agreement, Wyle Electronics agreed to indemnify Wyle Labs against certain liabilities related to the testing sites, including any pre-closing liabilities. (*Id.* ¶ 25.)

In 1997, the corporate predecessor to E.ON AG acquired the stock of Wyle

Electronics.[2]  As part of the stock purchase agreement (the "1997 Wyle Electronics-VEBA AG Agreement"), E.ON AG's corporate predecessor assumed certain corporate obligations of Wyle Electronics, including Wyle Electronics' obligations under the 1994 Wyle Electronics-Wyle Labs Agreement regarding environmental liabilities at the testing sites.  E.ON AG, in turn, inherited these same obligations from its corporate predecessor.

On August 7, 2000, Arrow entered into a "Share Purchase Agreement" through which it acquired Wyle Electronics' stock from a subsidiary of E.ON AG.  (*Id.* ¶ 27.)[3] E.ON AG was a signatory to the Share Purchase Agreement and agreed to be jointly and severally liable with its subsidiary for certain indemnification obligations set forth in the agreement.  (*Id.* ¶ 28.)

After Arrow acquired Wyle Electronics, Arrow incurred certain liabilities and expenses in connection with environmental remediation of the testing sites in Alabama and California, including amounts paid directly to Wyle Labs as the owner of the sites.  (*Id.* ¶ 47.)  The instant dispute arises from Arrow's demand that E.ON AG indemnify Arrow for these environmental and tax liabilities.  (*Id.* at 50, 57.)

---

[2]E.ON AG's corporate predecessor did business as VEBA AG.  The 1997 stock acquisition was accomplished through a holding company called EBV Holdings, Inc.  (*Id.* ¶ 16-18.)

[3]The subsidiary was known as VEBA Electronics and no longer is in business.

In the instant motion, the E.ON defendants move for the dismissal of this action on the following grounds: (1) that venue is improper due to a forum selection clause contained in the Share Purchase Agreement between the plaintiff Arrow and the defendant E.ON AG which identifies Frankfort, Germany, as the proper forum for the claims presented in this action; (2) that the plaintiff has failed to state a claim because it has waived its claims and in its place accepted the exclusive remedy of seeking indemnification under terms of the Share Purchase Agreement; and (3) that the court lacks jurisdiction over this action because the plaintiff has waived its federal claims, leaving only state law claims that are unsupported by diversity of citizenship jurisdiction. Because the court finds for the E.ON defendants on the question of venue, the court does not need to address defendants' other two arguments.

## **ANALYSIS**

The E.ON defendants move for dismissal on the ground that venue is improper under the forum selection clause in the Share Purchase Agreement between Arrow and E.ON AG. Section 11.10 of the Share Purchase Agreement provides:

> This Agreement shall be governed by, and construed in accordance with, the law of Germany. Any dispute arising out of or relating to this Agreement, or the breach, termination, or invalidity thereof, shall be settled in the courts of Frankfort am Main, Germany, which shall have exclusive jurisdiction.

The E.ON AG defendants argue that because under this provision venue over this

action is proper only in the courts of Frankfort, Germany, this action must be dismissed.

The first issue is whether this dispute is within section 11.10. This dispute revolves around liabilities related to the testing sites of Wyle Electronics. Arrow is liable for these amounts only because it purchased Wyle Electronics from E.ON AG. Arrow is seeking "declaratory relief, contribution, damages, and attorney's fees" from E.ON AG because "the E.ON Group willingly assumed liability for such costs" in the Share Purchase Agreement. (Compl., doc. 1, ¶ 1.) Accordingly, Arrow's claims against the E.ON defendants plainly are "dispute[s] arising out of or relating to this Agreement" within the meaning of section 11.10 of the Share Purchase Agreement.[4]

---

[4] Arrow makes two arguments that section 11.10 is vague or ambiguous. First, Arrow argues that the word "settled" in the phrase "[a]ny dispute … shall be settled in the courts of Frankfort, Germany" is ambiguous, and cites decisions by Alabama State courts in support of the argument. A critical flaw in Arrow's argument is that the Share Purchase Agreement is governed by German, not Alabama, law. Thus, Arrow has failed to cite any applicable authority for the proposition that the word "settled" is ambiguous, and the court finds no substantial uncertainty in the word's meaning.

Arrow's second argument is that section 11.10 is ambiguous because the 1994 agreement between Wyle Electronics and Wyle Labs provided for venue in the Central District of California. Arrow argues that the Share Purchase Agreement "explicitly acknowledged and assumed" the 1994 Agreement. What Arrow points to as an explicit acknowledgment and assumption is the following provision: "Pursuant to an indemnification provision of a disposition agreement entered into by Wyle Electronics and William E. Simon & Sons Investment Corporation ("WESS") on October 5, 1994 for the sale of the Scientific Services and Systems business of Wyle Laboratories (subsequently Wyle Electronics), Wyle is obligated to indemnify WESS's successor for the costs of cleaning up hydraulic oil that has contaminated [testing sites in Huntsville, Alabama and Norco, California]." (*See* Share Purchase Agreement, ex. 5.8, I, a-b.) While this provision admittedly "acknowledges" the 1994 Agreement, it cannot be reasonably construed to countermand or even cloud the clear, express, and unambiguous language of section 11.10. Furthermore, Arrow can cite no German authority for the proposition that a venue

The second question is whether section 11.10 is enforceable.[5] "[F]orum-selection and choice-of-law clauses are presumptively valid where the underlying transaction is fundamentally international in character." *Lipcon v. Underwriters at Lloyd's*, 148 F.3d 1285, 1295 (11th Cir. 1998) (internal quotation marks omitted). "Choice clauses will be found unreasonable under the circumstances and thus unenforceable only when: (1) their formation was induced by fraud or overreaching; (2) the plaintiff effectively would be deprived of its day in court because of the inconvenience or unfairness of the chosen forum; (3) the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of such provisions would contravene a strong public policy." *Id.* at 1295-96 (citations and internal quotation marks omitted).

Arrow's first argument is that this transaction is not international in character. The argument is plainly wrong. First, the parties to the Share Purchase Agreement are of international citizenship. E.ON AG is a German Corporation. (Compl., doc. 1, ¶ 3.) The plaintiff Arrow is an American company. Second, the Share Purchase Agreement specifies that it is to be governed by German law. (*See* Share Purchase

---

selection clause is made ambiguous if the same agreement merely refers to another agreement between two different parties with a contrary venue selection clause.

[5]"The enforceability or validity of a forum selection clause is a matter of federal procedural law." *In re Assicurazioni Generali S.P.A. Holocaust Ins. Litig.*, 228 F. Supp. 2d 348, 372 (S.D.N.Y. 2002).

Agreement 11.10 ("This Agreement shall be governed by, and construed in accordance with, the law of Germany.").) As a business transaction between international parties under an agreement governed under the laws of a foreign nation, the underlying transaction qualifies as international in character.

The only remaining question is whether the venue selection clause is unenforceable due to any of the four factors outlined by the Eleventh Circuit in *Lipcon*, 148 F.3d at 1295-96. Arrow does not make any arguments relating to fraud in the underlying transaction, or that it will be deprived of its day in court in Germany, or that German law is so fundamentally unfair that it will deny Arrow a meaningful remedy. Arrow's sole argument for unenforceability is that the venue selection clause violates public policy because this action involves claims under the Comprehensive Environmental Resource, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C.A. § 9601 *et seq*. However, Arrow has failed to cite any case where a court identifies a public policy against enforcing a forum selection clause with respect to CERCLA claims, nor has Arrow cited to any statute or regulation embodying such a public policy.[6] To the contrary, CERCLA expressly permits

---

[6]Arrow cites *E&J Gallo Winery v. Morand Bros. Bev. Co.*, 247 F. Supp. 2d 973, 978 (N.D. Ill. 2002), and *Assicurizioni Generali SpA Holocaust Ins. Litig.*, 228 F. Supp. 2d 348, 373-74 (S.D.N.Y. 2002). *E&J Gallo Winery* involved Illinois' "Beer Act," and *Holocaust Insurance Litigation* involved New York State's Holocaust Victim's Insurance Act. As these cases involved completely unrelated laws, they are inapposite. Arrow also cites *Blasland, Bouck, & Lee, Inc. v. City of N. Miami*, 283 F.3d 1286, 1304 (11th Cir. 2002), in which the Eleventh

parties to reallocate CERCLA liabilities between themselves through indemnification agreements. *See* 42 U.S.C.A. § 9607(e); *Blasland, Bouck, & Lee,* 283 F.3d at 1303 ("[I]n contribution suits, the defendant may escape liability either by virtue of an indemnification or a hold harmless agreement with the plaintiff …."). Given CERCLA's permissiveness with respect to allowing parties to allocate CERCLA's liabilities through private agreements, the court finds no basis for concluding that the law bars the parties from privately selecting the fora for enforcing any agreements they might make. Accordingly, Arrow has failed to establish the existence of a public policy against enforcing section 11.10.

---

Circuit relied upon the proposition that equitable defenses cannot be raised against CERCLA claims in rejecting the defendant's reliance on a "pay when paid" clause to defend against the plaintiff's CERCLA claims. This case provides no support to Arrow's argument that a public policy exists against enforcing forum selection clauses with respect to CERCLA claims.

## CONCLUSION

Section 11.10 of the Share Purchase Agreement is an unambiguous venue selection clause that applies to Arrow's claims against the E.ON defendants.[7] Venue in this court therefore is improper, and the E.ON defendants' motion to dismiss is due to be granted. A separate order will be entered.

**DONE** and **ORDERED** this 18th day of May, 2005.

*[signature]*

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[7] Arrow asserts its claims against the E.ON AG and the other E.ON defendants under the argument that the other E.ON defendants are alter-egos of E.ON AG. Accordingly, Arrow's claims against all E.ON defendants are subject to section 11.10.